UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL PATRICK PIMENTEL,<br><br>  Plaintiff,<br><br>  v.<br><br>MENDOCINO COUNTY,<br><br>  Defendant. | Case No. 5:24-cv-04757-EJD<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: ECF No. 1 |

On August 11, 2021, the California Superior Court for the County of Mendocino sentenced Petitioner Michael Patrick Pimentel ("Pimentel") to 48 hours in county jail and 36 months of probation for driving under the influence of alcohol ("DUI").  Pimentel now seeks reversal of his conviction by petitioning this Court for a writ of habeas corpus under 28 U.S.C. § 2254.  Pet., ECF No. 1.  Pimentel claims that his trial attorney provided ineffective assistance and deprived him of his Sixth Amendment right to counsel when she failed to challenge an allegedly erroneous statement the prosecution made to the jury.  After careful consideration of the parties' submissions and the record in this matter, the Court **DENIES** Pimentel's petition.

**I.    BACKGROUND[1]**

**A.    Factual Background**

On the night of December 20, 2019, Deputy August Kinney of the Mendocino County Sheriff's Office stopped a green Mercedes Benz for failing to make a complete stop at a stop sign

---

[1] These facts are taken from the California Court of Appeal's opinion in Pimentel's direct appeal. CT 724–38; *see also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct.").

Case No.: 5:24-cv-04757-EJD
ORDER DENYING PET. FOR WRIT OF HABEAS CORPUS
1

and for displaying an expired registration tag. When he contacted the driver of the vehicle—who he later identified as Pimentel—Deputy Kinney detected the odor of an alcoholic beverage and noticed that the driver had red, watery eyes. Pimentel initially denied that he had had anything to drink that night but later admitted that he had drunk two beers a few hours prior.

With Pimentel's consent, Officer Alexander Cowan of the Ukiah Police Department administered a preliminary alcohol screening ("PAS") test using the Ukiah Police Department's device. The first PAS test yielded a blood alcohol content ("BAC") result of 0.135 percent, over the legal limit of 0.08 percent. Deputy Kinney asked Pimentel to perform three field sobriety tests: a modified Romberg test, a one-legged stand test, and a walk-and-turn test. Pimentel's performance on each of these tests indicated he was under the influence of alcohol. Deputy Kinney then asked Pimentel to take a second PAS test, which yielded a BAC of 0.13 percent. Deputy Kinney subsequently placed Pimentel under arrest and drove him to the Ukiah Police Department to administer an evidentiary breath test. Pimentel took two such tests, both of which yielded a BAC of 0.12 percent.

### B.     Procedural Background

On January 10, 2020, the Mendocino County District Attorney filed a two-count misdemeanor complaint against Pimentel. CT 14–16.[2] The complaint alleged one count for DUI, and a second count for driving with a BAC of 0.08 percent or more. The prosecution tried the case before a jury in June 2021. Approximately eight hours after it began deliberating, the jury notified the court that it could not reach a verdict. The jurors were split seven to five on count one in favor of acquittal and "close to the same" on count two. After questioning each juror, the court determined that the jury was hopelessly deadlocked and declared a mistrial.

The prosecution retried the case one year later in July 2022. This time, after 26 minutes of deliberation, the jury unanimously found Pimentel guilty of both counts. The court sentenced

---

[2] The Court cites to the Clerk's Transcript (filed at ECF Nos. 9-4 to -6) as "CT [Page]" and to the Reporter's Transcript (filed at ECF No. 9-7) as "RT [Page]." The Court cites to original page numbers on the transcripts, not the ECF-stamped pagination.

Case No.:   5:24-cv-04757-EJD
ORDER DENYING PET. FOR WRIT OF HABEAS CORPUS
2

1 Pimentel to 48 hours of county jail and 36 months of probation.

2 Pimentel timely appealed, and in April 2023, the Appellate Division of the Mendocino County Superior Court upheld the judgment. In November 2023, the California Court of Appeal denied Pimentel's application for transfer of his appeal to the appellate court. Pimentel filed the instant petition for habeas corpus on August 7, 2024.

## II. LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs federal habeas petitions for relief from a state conviction. As relevant here, AEDPA permits courts to grant a petition for habeas relief if the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). This is a "highly deferential" standard of review. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

A state court's decision is an "unreasonable application" of clearly established federal law only if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An unreasonable state decision must be more than "merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014). Rather, to be unreasonable, it must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

In assessing whether the state court reached a decision that was an unreasonable application of federal law, federal courts typically "look through" any unexplained state-court decisions to "the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). In doing so, the federal courts "presume that the unexplained decision[s] adopted the same reasoning" as the last explained decision. *Id.*

## III. DISCUSSION

Criminal defendants have the right to effective assistance of counsel under the Sixth

Amendment. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show that counsel's assistance was constitutionally deficient, a defendant must satisfy the two-part *Strickland* test. First, the defendant must show deficient performance, meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. When assessing the attorney's performance for deficiency, "substantial deference must be accorded to counsel's judgment." *Premo v. Moore*, 562 U.S. 115, 126 (2011). Thus, courts start from the presumption that counsel's challenged actions "might be considered sound trial strategy." *United States v. Juliano*, 12 F.4th 937, 940 (9th Cir. 2021). Second, the defendant must show that any deficient performance prejudiced her defense. *Strickland*, 466 U.S. at 687. That is, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The likelihood of a different result must be "sufficient to undermine confidence in the outcome," *id.*, and "substantial, not just conceivable," *Harrington*, 562 U.S. at 112.

When federal courts conduct habeas review of state court decisions, the already deferential *Strickland* test becomes "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (citation omitted). In other words, the federal habeas court gives both the state court's judgment and the defense attorney's trial judgment the benefit of the doubt. *Id.*

Here, Pimentel contends that his attorney rendered ineffective assistance by failing to object to the prosecutor's misstatements in his retrial. Pet. at 5. During closing argument, the prosecutor told jurors that Pimentel's last two BAC results of 0.12 percent were "150 times the legal limit." RT 2261–62. Pimentel's counsel did not object. *See id.* Nor did counsel correct the prosecutor's misstatement during her own closing argument. *See id.* at 2265–70. Instead, counsel argued that the prosecution had failed to prove beyond a reasonable doubt that the breath tests were properly administered or that the breathalyzers were working properly. *Id.* at 2266. Pimentel argues his counsel's failure to correct the prosecutor's misstatement undermined his defense that his breath test results were unreliable, because a BAC "150 times the legal limit" is so high that it cannot be explained away by faulty testing. Traverse at 7, ECF No. 14.

Case No.: 5:24-cv-04757-EJD
ORDER DENYING PET. FOR WRIT OF HABEAS CORPUS
4

Starting with *Strickland*'s first prong (deficient performance), the Court begins with the presumption that Pimentel's attorney made the strategic decision not to object to the prosecutor's misstatement. *See Cunningham v. Wong*, 704 F.3d 1143, 1159 (9th Cir. 2013) (quoting *United States v. Necoechea*, 986 F.2d 1273, 1281 (9th Cir. 1993)) ("[B]ecause many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct."). Pimentel's counsel may have chosen not to object because calling out the "150 times" figure would risk bringing attention to the issue. Had counsel done so, the prosecutor in rebuttal presumably would have redone the math and reemphasized that Pimentel still blew over the legal limit. Indeed, that is precisely what the California Court of Appeal found here. RT 2847–48.

Any benefit in objecting to the prosecutor's misstatement was further diminished by the trial court's jury instructions. Before and after evidence was presented, the trial court instructed the jury that attorney statements should not be considered as evidence, and that the jury should refer to the trial record if there were any inconsistencies between attorney statements and the evidence presented. *Id.*; *see also* CT 484 (CALCRIM 202); CT 488 (CALCRIM 222). All trial testimony consistently identified Pimentel's BAC result as 0.12 percent, so the jury likely would have discounted the "150 times" figure in the prosecution's closing argument as non-evidence and an isolated error. *See* RT 2848. At best, calling out the prosecutor's misstatement would have momentarily confused the jury. Given this poor risk-reward tradeoff, the state court fairly concluded that Pimentel's counsel made the reasonable decision not to object during the prosecutor's closing statement. *See Dunn v. Reeves*, 594 U.S. 731, 740 (2021) ("[A] federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision." (citation omitted).

For similar reasons, Pimentel's ineffective assistance claim fails to clear *Strickland*'s prejudice prong. It is not apparent that the jury credited the "150 times" misstatement as true, and the state trial court corrected any such improper reliance through the jury instructions. A jury is

Case No.: 5:24-cv-04757-EJD
ORDER DENYING PET. FOR WRIT OF HABEAS CORPUS
5

presumed to follow the trial court's instructions. *Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005). Even if the jury had ignored the court's instructions or otherwise considered the prosecutor's misstatement during deliberations, there was still ample evidence to support a guilty verdict. Pimentel admitted to having consumed two beers and was in possession of a half-empty bottle of Hennessey. RT 599. His initial PAS resulted in BAC readings of 0.135 and 0.13 percent, and all other trial testimony showed that Pimentel had a BAC of 0.12 percent on the evidentiary breath tests. Furthermore, the prosecution had no burden to prove that Pimentel's BAC was any multiple of the legal limit; it only had to prove beyond a reasonable doubt that his BAC was above the legal limit of 0.08 percent. Given the evidence presented, it is unlikely that Pimentel would have been acquitted but for the prosecutor's single misstatement.

Pimentel in his traverse emphasizes that his first trial ended in a mistrial, and most jurors were in favor of acquittal on both counts. Traverse at 7–12. Most of the evidence presented to the jury was the same across both trials. The only significant difference between his two trials, according to Pimentel, was the prosecutor's "150 times" misstatement in the retrial. *Compare* RT 881–88, *with id.* at 2261–62. Pimentel claims that this demonstrates a direct causal connection between the prosecutor's misstatement and his guilty verdict. But like the state court, the Court is unpersuaded. *See* RT 2849. The fact that there were different jurors between the two trials is enough to attenuate, if not break the causal link that Pimentel supposes. Whether it was the new set of jurors or the prosecutor's misstatement that led to the different result on retrial is a matter of speculation. And speculation is certainly not enough to demonstrate prejudice under *Strickland*'s second prong.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Pimentel's petition for a writ of habeas corpus. No certificate of appealability shall issue, because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Case No.: 5:24-cv-04757-EJD
ORDER DENYING PET. FOR WRIT OF HABEAS CORPUS
6

**IT IS SO ORDERED.**

Dated:  October 1, 2025

                                                                         _____
                                                                         EDWARD J. DAVILA
                                                                         United States District Judge